Judge Martinez

1

2

3

4

5

6

7

8

9          UNITED STATES DISTRICT COURT
           WESTERN DISTRICT OF WASHINGTON
10                    AT SEATTLE

11  BRIAN D. BORGELT and CHARLES N. CARR, )
    dba BULL'S EYE SHOOTERS SUPPLY,        )
12                                         )     NO. C03-2630RSM
                  Petitioners,             )
13                                         )     **ATF'S MEMORANDUM OF POINTS**
                  v.                       )     **AND AUTHORITIES IN**
14                                         )     **OPPOSITION TO PETITIONERS'**
    THE BUREAU OF ALCOHOL, TOBACCO AND )        **MOTION FOR SUMMARY**
15  FIREARMS,                             )     **JUDGMENT AND IN SUPPORT OF**
                                          )     **ATF'S CROSS-MOTION FOR**
16                Respondent.              )     **SUMMARY JUDGMENT**
                                          )
17

18          Respondent, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), hereby submits

19  its memorandum in opposition to the motion of petitioners Brian D. Borgelt and Charles N. Carr

20  ("petitioners") for summary judgment and in support of its cross-motion for summary judgment.[1]

21                              **INTRODUCTION**

22          In this action, petitioners are challenging an ATF decision to revoke their federal firearms

23  license.  The petitioners requested and were afforded an administrative hearing in which evidence was

24  received, testimony was heard, and a decision made on the record.  The questions before the Court are

25  (1) whether there is evidentiary support in the administrative record to support ATF's conclusion that a

26

27      [1]  This memorandum is within the page limitations established by the Court in its "Order Striking as Moot
    Petitioners' Motion for Summary Judgment," dated January 22, 2009 (Dkt. #64).

28

1   violation or violations of ATF regulations occurred; and (2) whether the violations, or any of them, were

2   "willful" within the meaning of 18 U.S.C. § 923(e).[2]

3       Petitioners have filed a motion for summary judgment in which they contend that the revocation

4   of their federal firearms license by ATF was not lawful.  By all appearances, petitioners are not arguing

5   that they did not commit violations of ATF regulations.  Instead, the thrust of their argument is that these

6   violations were not "willful."  To that end, petitioners alternatively minimize the scope and seriousness

7   of their actions or try to shift blame to others, including the ATF.

8       As set forth in this memorandum, however, the administrative record establishes both that

9   petitioners committed numerous violations of the legal requirements applicable to federal firearms

10  licensees, and the willfulness of those violations.  Therefore, petitioners' motion for summary judgment

11  should be denied, and ATF's cross-motion for summary judgment should be granted.

12                          **REGULATORY BACKGROUND**

13      There is a pervasive system of regulation and reporting imposed on federally licensed dealers in

14  firearms.  *United States v. Biswell*, 406 U.S. 311, 315 (1972).  As the high Court observed, "close

15  scrutiny of this traffic is undeniably of central importance to federal efforts to prevent violent crime and

16  to assist the States in regulating the firearms traffic within their borders."  *Id*.  According to the Court,

17  "[l]arge interests are at stake, and inspection is a crucial part of the regulatory scheme, since it assures

18  that weapons are distributed through regular channels and in a traceable manner and makes possible the

19  prevention of sales to undesirable customers and the detection of the origin of particular firearms."  *Id.* at

20  315-316.

21      The primary statute which establishes federal regulatory control over businesses dealing in

22  firearms is the Gun Control Act of 1968 ("GCA"), 18 U.S.C. Chapter 44.  Under the GCA, the Attorney

23  General is authorized, after notice and an opportunity to be heard, to revoke any license issued under the

24  _____

25      [2] Ordinarily, judicial review of final agency action is exclusively based on the administrative record.
    However, as distinguished from actions which seek review of final agency actions under the arbitrary and
26  capricious standard of review of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), a district
    court may, but is not required to consider extra-record evidence under 18 U.S.C. § 923(f)(3).  This unique
27  attribute of judicial review under 18 U.S.C. § 923(f)(3) was the subject of earlier briefing in this action.  *See,*
    Respondent's Memorandum of Points and Authorities in Opposition to Petitioners' Motion for Determination of
28  Scope and Standard of Review (Dkt. # 50).

ATF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONERS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
ATF'S CROSS-MOTION FOR SUMMARY JUDGMENT - 2
(C03-2630RSM)

UNITED STATES ATTORNEY
5220 United States Courthouse
700 Stewart Street
Seattle, Washington 98101-1271
(206) 553-7970

1   GCA if the holder of the license willfully violates any provision of the Act or any rule or regulation

2   implementing the Act.  18 U.S.C. § 923(e); 27 C.F.R. § 478.73.[3]  The Director of ATF has been

3   authorized by the Attorney General to enforce the provisions of the GCA.  28 C.F.R. § 0.130(a)(1).  The

4   principal ATF regional official responsible for the administration of the GCA is the Director of Industry

5   Operations (DIO).  27 C.F.R. § 478.11.

6                                  **STATEMENT OF FACTS**

7           On December 4, 2002, the DIO, Seattle Field Division, issued a Notice of Revocation of License

8   to Brian D. Borgelt and Charles N. Carr, *dba* Bull's Eye Shooters Supply ("Bull's Eye"), Tacoma,

9   Washington (GX-A).[4]  This Notice was served by certified mail in accordance with 27 C.F.R. § 478.75

10  at petitioners' business address (GX-B).  Petitioners were provided 15 days to request a hearing to

11  review the revocation of their license as provided by 18 U.S.C. § 923(f)(2) and 27 C.F.R. § 478.74.

12  Petitioners timely requested a hearing (GX-C).

13          On April 16, 2003, an administrative hearing was convened.  Present at the hearing was the

14  Hearing Officer, Casimir Mleczko, Mr. Brian D. Borgelt, partner/owner of Bull's Eye, Ms. Deborah

15  McCollum, Administrator/Manager of Bull's Eye, C. James Frush, Esquire, attorney for petitioners, ATF

16  Inspectors John Dimond, Kent Sanchez and Sandra Sherlock, witnesses for the government, Special

17  Operations Inspector Martha Tebbenkamp, observer; and, Larry L. Nickell, ATF Assistant Chief

18  Counsel, attorney for the government.

19          The hearing was tape recorded onto five (5) ninety (90)-minute cassette tapes by Hearing Officer

20  Mleczko (Item 24, Admin. Rec.).  Hearing Officer Mleczko prepared a written report dated May 9, 2003,

21

22      [3]  On November 25, 2002, the President signed into law the Homeland Security Act of 2002, Pub. L. No. 107-
23  296, 116 Stat. 2135 (2002).  The Act divided the Bureau of Alcohol, Tobacco and Firearms into two separate
    agencies.  With respect to the enforcement of the Federal firearms laws, title XI, subtitle B, section 1111 of the
24  Act transfers the authority to enforce these laws to the Bureau of Alcohol, Tobacco, Firearms and Explosives,
    Department of Justice, effective January 24, 2003.  This transfer required the reorganization of Title 27 of the
25  Code of Federal Regulations.  Part 178 of title 27, C.F.R., has been recodified as Part 478.  While the notice in
    this matter was issued prior to the recodification of Part 178, all references to the regulations in this document
26  will be to the current equivalent regulation in Part 478.

27      [4]  A paper copy of the administrative record was filed with the Court on May 4, 2004.  Dkt. # 14, 15, 16.  The
    references in this statement of facts, *e.g.*, "GX-A," are to the administrative record.

28

ATF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONERS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
ATF'S CROSS-MOTION FOR SUMMARY JUDGMENT - 3
(C03-2630RSM)

UNITED STATES ATTORNEY
5220 United States Courthouse
700 Stewart Street
Seattle, Washington 98101-1271
(206) 553-7970

1   which included a recommendation to the DIO (Item 23, Admin. Rec.).  On June 27, 2003, the DIO

2   issued petitioners a Final Notice of Denial of Application or Revocation of Firearms License with

3   findings and conclusions that revoked petitioners' firearms dealers license (Item 25, Admin. Rec.).  The

4   Hearing Officer's report, tapes of the hearing, testimony, arguments, exhibits admitted at the hearing,

5   and the Final Notice of Revocation of License constitute the administrative record in this case.

6        The revocation of petitioners' federal firearms license was sustained on four separate bases.  First,

7   the ATF found that petitioners, doing business as "Bull's Eye Shooters Supply," had willfully failed to

8   obtain a "Firearms Transaction Record" (ATF Form 4473) from the transferee of a firearm on

9   33 separate occasions involving 34 firearms between March 8, 1997 and September 22, 2002.  Item 25,

10  pp. 2-4 (¶¶ 1-3).  The GCA and its regulations require that every licensed firearms dealer obtain a

11  Form 4473, completed in part by the licensee and the firearms dealer, prior to transferring a firearm.

12  These forms are to be maintained by the dealer for twenty years, 27 C.F.R. § 478.129(a), and are to be

13  kept available for inspection, 27 C.F.R. § 478.121.  Petitioners were not able to produce Form 4473s for

14  these 34 firearms transactions.  *Id*.

15       Second, the ATF found that petitioners had willfully failed to maintain their Form 4473s in any

16  orderly system.  Item 25, p. 4-5 (¶¶ 4-8).  This finding was based on an ATF inspection of petitioners'

17  place of business in which over 1,200 forms covering several years of transactions were found stacked

18  up haphazardly behind a sales counter at the store facility.  *Id*.  The ATF concluded that this was a

19  violation of 27 C.F.R. § 478.124(b).  *Id.*

20       Third, the ATF found that, in 16 instances out of a sample of 1,438 Form 4473s analyzed,

21  petitioners willfully failed to fully enter required information relating to the National Instant Criminal

22  Background Check System ("NICS").  Item 25, pp. 5-6 (¶¶ 9-10).  As required by 18 U.S.C.

23  §§ 922(t)(4), 923(g)(1) and 27 C.F.R. § 478.124(c)(3)(iii), a licensee is required to record on the

24  Form 4473 the unique identification number provided by NICS, and the nature of the response, as a

25  means of verifying that NICS was contacted prior to the transfer of firearms.

26       Fourth, the ATF concluded that petitioners willfully failed to account for the disposition of

27  firearms.  Item 25, p. 6 (¶¶ 11-12).  During the 2002 inspection, petitioners were unable to account for

28

ATF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONERS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
ATF'S CROSS-MOTION FOR SUMMARY JUDGMENT - 4
(C03-2630RSM)

UNITED STATES ATTORNEY
5220 United States Courthouse
700 Stewart Street
Seattle, Washington 98101-1271
(206) 553-7970

1    the whereabouts of 262 firearms which its records showed it had received into inventory. *Id*. As

2    required by 18 U.S.C. § 923(g)(1) and 27 C.F.R. § 478.125(e), a licensee is required to record the sale or

3    other disposition of a firearm not later than seven days following the date of the transaction.

4                                **STANDARD OF REVIEW**

5           The GCA, specifically, 18 U.S.C. § 923(e), provides that "the Attorney General may, after notice

6    and opportunity for hearing, revoke any license issued under this section if the holder of such license has

7    willfully violated any provision of this subchapter or any rule or regulation prescribed by the Attorney

8    General under this chapter."   The ATF's conclusion that petitioners willfully violated provisions of the

9    GCA, and regulations promulgated thereunder, is subject to *de novo* review.  18 U.S.C. § 923(f)(3).[5]

10    The District Court can receive and consider additional evidence, or can grant judgment solely on the

11    basis of the administrative record without conducting any further hearing.  *DiMartino v. Buckles,*

12    129 F. Supp.2d 824, 827 (D. Md. 2001), *aff'd*, 19 Fed. Appx. 114 (4th Cir. 2001).[6]

13

---

14    [5]  18 U.S.C. § 923(f)(3) provides, in pertinent part:

15

16       If after [an administrative hearing] the Attorney General decides not to reverse his decision to deny an application or revoke a license, he shall give notice of his decision to the aggrieved party. The aggrieved party may at any time within sixty days after the date notice was given under this paragraph file a petition with the United States district court for the district in which he resides or has his principal place of business for a de novo judicial review of such denial or revocation. In a proceeding conducted under this subsection, the court may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the [administrative hearing].  If the court decides that the Attorney General was not authorized to deny the application or to revoke the license, the court shall order the Attorney General to take such action as may be necessary to comply with the judgment of the court.

17

18

19

20

21    [6]  Although characterized by the parties as cross-motions for summary judgment, 18 U.S.C. § 923(f)(3) sets up a unique procedure which does not precisely fit the mold of a conventional summary judgment motion.  This

22    was recognized in *Pinion Enterprises, Inc. v. Ashcroft*, 371 F. Supp. 2d 1311 (N.D. Ala. 2005), where the District Court explained:

23

24       While some courts have characterized a party's motion under § 923(f)(3) as one for "summary judgment," *See e.g, DiMartino v. Buckley* [sic.], 19 Fed. Appx. 114, 115, No. 01-1166, 2001 WL1127288, at *1 (4th Cir. Sept. 25, 2001), *Cook v. Herbert*, 2004 U.S. Dist. LEXIS 61, No. Civ.A. 5:03CV00042, 2004 WL 40525, at * 1 (W.D. Va. Jan. 5, 2004), this designation may confuse the issues and is not apposite.  As recognized in *Stein's v. Blumenthal*, under the traditional summary judgment standard, "technically fact finding is inappropriate and all reasonable inferences must be draw in favor of the party opposing the motion."  649 F.2d 463, 468 n.7 (7th Cir. 1980).  In contrast, section 923(f)(3) authorizes the district court to hear any evidence it wishes and make findings of fact, even without the benefit of conducting an evidentiary hearing.  Id. at 466 ("The ultimate decision as to the law and the facts remains with

25

26

27

28

---

ATF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONERS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
ATF'S CROSS-MOTION FOR SUMMARY JUDGMENT - 5
(C03-2630RSM)

1      For purposes of 18 U.S.C. § 923(e), a dealer violates the law willfully when he "understands the

2 requirements of the law, but knowingly fails to follow them or was indifferent to them." *Perri v.*

3 *Department of the Treasury, Bureau of Alcohol, Tobacco and Firearms*, 637 F.2d 1332, 1336 (9th Cir.

4 1981). This definition was recently clarified and reaffirmed by our Court of Appeals in *General Store,*

5 *Inc. v. Van Loan*, 560 F.2d 920 (9th Cir. 2009) (as amended). According to the Court, while

6 "indifference" for purposes of 18 U.S.C. § 923(e) does not include "mere mistake or negligence," it does

7 encompass violations which are "reckless," in that they reflect "'[c]onscious *indifference* to the

8 consequences of an act.'" *Id.* at 923-24 (quoting Black's Law Dictionary, 506 (8th ed.2004) (emphasis

9 original)). Also, the Court recognized there is no minimum number of willful violations necessary to

10 support a revocation of a federal firearms license. "One single willful violation," the Court wrote, "is

11 grounds for upholding the revocation." *Id. at* 924.[7]

12      If a district court determines that a willful violation has been proven, it must defer to ATF's

13 selection of the appropriate penalty. *Stein's Inc. v. Blumenthal*, 649 F.2d 463, 464-65 n.2 (7th Cir.

14 1980); *Pinion Enterprises, Inc. v. Ashcroft*, 371 F.Supp.2d 1311, 1315 (N.D. Ala. 2005) (court is not

15 called upon under 923(f) to decide whether it would revoke the license in it's own judgment); *Breit &*

16 *Johnson Sporting Goods, Inc. v. Ashcroft*, 320 F.Supp.2d 671, 673 (N.D. Ill. 2004). On the other hand,

17 if a district court decides that the Attorney General was not authorized to revoke the license, ATF is

18 required to take such action as may be necessary to comply with the judgment of the Court. 18 U.S.C. §

19

20      the trial judge."). Thus, while the Court's decision may be "summary" in nature as a matter of

21      form, procedurally the Court may issue a decision even if material issues of fact exist, based upon its evaluation of the record and any additional evidence it has received.

22 *Id.* at 1314.

23     [7] Petitioners' argument for a standard of willfulness that is at odds with that set forth in *General Store* should

24 be rejected. Neither of the two cases cited by petitioners in their memorandum, *Al's Loan Office v. U.S. Dept. of Treasury*, 738 F. Supp. 221 (E.D. Mich. 1990), and *Stein's Inc. v. Blumenthal*, 649 F.2d 463 (7th Cir. 1980), hold,

25 as petitioners contend, that the Government "must establish that the dealer had actual knowledge of the specific regulations allegedly violated, and repeatedly and continuously violated those standards." Petit. Memo., p. 2,

26 *ll.* 1-7. Such evidence was found to be sufficient in those cases to support a finding of willfulness, but neither case held that such evidence was necessary. *See, e.g., Stein's Inc.*, 649 F.2d at 468 ("Evidence of repeated

27 violations with knowledge of the law's requirements has been held *sufficient* to establish willfulness.") (emphasis added). In any event, in the case of a split of authority, the rule announced in *General Store* would be controlling

28 here.

---

ATF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONERS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
ATF'S CROSS-MOTION FOR SUMMARY JUDGMENT - 6
(C03-2630RSM)

UNITED STATES ATTORNEY
5220 United States Courthouse
700 Stewart Street
Seattle, Washington 98101-1271
(206) 553-7970

1  923(f)(3).

2                                    **ARGUMENT**

3  **I.    Petitioners Willfully Failed to Obtain Forms 4473**

4          The revocation of petitioners' Federal Firearms License was sustained on four separate bases.

5  The first of these was an ATF finding that petitioners, doing business as "Bull's Eye Shooters Supply,"

6  willfully failed to obtain a "Firearms Transaction Record" (ATF Form 4473) from the transferee of a

7  firearm on 33 occasions involving 34 firearms between March 8, 1997 and September 22, 2002.

8  Item 25, pp. 2-4 (¶¶ 1-3).  The GCA and its regulations require that every licensed firearms dealer obtain

9  a Form 4473, completed in part by the licensee and in part by the firearms dealer, prior to transferring a

10 firearm.  These forms are to be maintained by the dealer for twenty years, 27 C.F.R. § 478.129(a), and

11 are to be kept available for inspection, 27 C.F.R. § 478.121.  As ATF found, petitioners were not able to

12 produce Form 4473s for 34 firearms transactions.  *Id.*

13         In their argument, petitioners contend that ATF did not meet its burden of proof because ATF

14 established only that petitioners could not locate and produce 34 Form 4473s, and not that petitioners'

15 employees failed to obtain completed forms from the transferees for the firearms transactions in

16 question.  Indeed, petitioners contend that there is evidence that at least some of the missing Form 4473s

17 were completed by their employees, even though the actual forms could not be located or produced.

18 Petitioners note that, in regards to 25 of the 34 firearms, the State of Washington's database reflected a

19 transaction.  Petitioners reason from that fact that petitioners' employees completed and filed a report

20 with the State in regards to those 25 dispositions.  Petitioners argue from this initial premise that,

21 because their employees filed a transaction report with the State, ATF should have found that these

22 employees would likely also have obtained a Form 4473 from the transferee, and completed it, even

23 though petitioners could neither locate or produce a Form 4473 corresponding to the particular

24 transaction.  In other words, according to petitioners, the finder of fact *could have* inferred that if

25 petitioners' employees went to the trouble of reporting the transaction to the State, they likely would

26 have also gone to the trouble of meeting the requirements associated with a Form 4473.  Secondarily,

27 petitioners contend that, because some of the firearms transactions took place during periods covered by

28

ATF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONERS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
ATF'S CROSS-MOTION FOR SUMMARY JUDGMENT - 7
(C03-2630RSM)

UNITED STATES ATTORNEY
5220 United States Courthouse
700 Stewart Street
Seattle, Washington 98101-1271
(206) 553-7970

1  prior ATF audits, and because ATF did not raise the fact that the Form 4473s were missing in the course

2  of those prior audits, ATF is barred from making an issue of that subset of missing Form 4473s.  Finally,

3  petitioners contend that the number of missing Form 4473s was *de minimis* in relation to the total

4  number of firearms transactions during the same period.

5          These arguments all miss their mark.  The GCA and its regulations require that every licensed

6  firearms dealer obtain a Form 4473, completed in part by the firearms transferee and the firearms dealer,

7  prior to the transfer of a firearm.  Form 4473s documenting such transfers are to be maintained by the

8  dealer for twenty years, 27 C.F.R. § 478.129(a), and are to be kept available for inspection by ATF,

9  27 C.F.R. § 478.121.

10         In October 2002, ATF inspectors conducted a physical count of the firearms present in

11  petitioners' inventory.  They compared this count to petitioners' federally required inventory record, the

12  Acquisition and Disposition ("A&D") Record.  If the A&D record contains no record of the disposition

13  of a firearm, the firearm should be located in inventory.  ATF inspectors identified a number of firearms

14  that, according to petitioners' records, should have been in their inventory.  (Transcript, p. 134).  Of

15  course, the absence of a firearm shown as being in the licensee's inventory is a serious matter and

16  inspectors will attempt to determine why this situation exists.  In this case, the record establishes that

17  inspectors enlisted assistance from petitioners' employees and contacted a state agency in an effort to

18  determine what happened to these firearms.  With respect to the 34 specified firearms, ATF inspectors

19  gathered information that established that these firearms had actually been transferred by petitioners.

20  However, petitioners could not locate a Form 4473 covering these particular firearms transfers when

21  asked by ATF to produce them.

22         Other sources of information existed which documented that the firearms had been transferred.

23  Sandra Sherlock, the lead inspector conducting the October 2002 inspection of petitioners' place of

24  business, contacted the State of Washington Department of Licensing, Firearms Program, to determine

25  whether that agency had any documentation relating to the transfer of handguns by petitioners in regards

26  to the firearms for which a Forms 4473 could not be located.  Inspector Sherlock explained that

27  Washington State law requires firearms dealers to report new handgun sales to local law enforcement

28

ATF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONERS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
ATF'S CROSS-MOTION FOR SUMMARY JUDGMENT - 8
(C03-2630RSM)

UNITED STATES ATTORNEY
5220 United States Courthouse
700 Stewart Street
Seattle, Washington 98101-1271
(206) 553-7970

1  agencies who, in turn, transmit this information to the Department of Licensing.  She further testified

2  that a certified letter was received from that Department documenting twenty-five handgun transfers

3  involving the handguns for which no Form 4473 could be found.  (Transcript, pp. 134–5).  This

4  information was provided to petitioners in an attachment labeled Exhibit A to the Notice of Revocation

5  of License, ATF F 4500.  Inspector Sherlock testified that an additional nine firearms transfers were

6  documented by other commercial records maintained by petitioners.  Sherlock was provided a "Ticket

7  History Report" by petitioners' employees.  This report documented transfers of inventory for petitioners'

8  internal use.  (Transcript, pp. 136–141).

9      This evidence supports the conclusion that the 34 firearms were, in fact, transferred by petitioners

10  without creating the required Form 4473.  In rebuttal, petitioners have not, and apparently cannot,

11  produce the missing Form 4473s.  Instead, the Court is asked to draw a inference based on circumstantial

12  evidence that if petitioners' employees completed Washington State-required firearms transfer

13  documentation with respect to 25 of the firearms transactions, they must also have, in regards to those

14  25 transactions, simultaneously obtained completed Form 4473s from the transferees, made the

15  necessary inquiries from the NICS, and then recorded that information as well.

16      With respect to circumstantial evidence, there is a distinction between that which is mere

17  conjecture and that which is reasonable inference.  *Gardner v. Seymour*, 27 Wn.2d 802, 808-809 (1947).

18  Here, the fact that petitioners' employees complied with the state requirements pertaining to the transfer

19  of a firearm in the case of 25 of the 34 firearms transactions in question does not tend to establish that

20  they also complied with the different and more rigorous federal requirement and that the Form 4473s

21  pertaining to those transactions were simply lost or misplaced.  Rather, testimony elicited at the hearing

22  pointed in the opposite direction.  On cross-examination, Inspector Sherlock testified that it was not her

23  experience that when a firearms licensee sells a handgun in Washington State it simultaneously prepares

24  state and federal forms.  (Transcript, p. 187).  This was also borne out by the testimony of petitioners'

25  own store manager, Deborah McCollum.  Ms. McCollum, who is the employee petitioners' primarily

26  relied upon for compliance with federal recordkeeping requirements, testified that the practice at Bull's

27  Eye was precisely the same as that which Inspector Sherlock had seen elsewhere.  Indeed,

28

ATF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONERS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
ATF'S CROSS-MOTION FOR SUMMARY JUDGMENT - 9
(C03-2630RSM)

UNITED STATES ATTORNEY
5220 United States Courthouse
700 Stewart Street
Seattle, Washington 98101-1271
(206) 553-7970

1    Ms. McCollum testified that ". . . I prefer just the pistol paperwork be done and the 4473 be done when

2    they come to pick it up." (Transcript, pp. 261-262). She further confirmed this practice on

3    cross-examination. (Transcript, p. 290–1). In other words, even the testimony of petitioners' own store

4    manager does not support the fundamental factual premise upon which petitioners' rely in asking that the

5    inference be drawn, *viz.* simultaneous completion and submission by petitioners' employees of both state

6    and federal required reports at the time of a firearms transaction.[8]

7        Petitioners' next argument is a legal argument. Petitioners contend that it is "unfair" to base the

8    revocation of their federal firearms license on missing Form 4473s that were not identified in the course

9    of prior audits of their business establishment. Obviously, fairness, like beauty, tends to be in the eye of

10   the beholder. Other than decrying the perceived lack of fairness in ATF's decision, petitioners do not

11   cite a single case or identify any particular legal theory which supports their argument.[9]

12       Indeed, this argument is part and parcel of petitioners' overall effort to shift blame to others for

13   their own failings in fulfilling the enormous responsibilities they undertook when they received their

14   federal firearms license. As the Court in *Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco and*

15   *Firearms*, 348 F. Supp.2d 1299 (S.D. Ala. 2004), recognized, "[i]f ever there was a statutory scheme

16   where a licensee should be obligated to 'sweat the details,' irrespective of how trifling they may appear,

17   the Gun Control Act would appear to fit that bill." *Id.* at 1309 n.14. Petitioners here tacitly suggest that

18

19       [8] Moreover, assuming for purposes of argument that petitioners were able to prove that their employees
actually obtained completed Form 4473s from the transferees at the time of transfer, they still would not have

20   satisfied the requirement of ATF regulations. The requirement in the regulations is that the Form 4473s be
maintained by the dealer for twenty years and be kept available for inspection by ATF. 27 C.F.R. §§ 478.121,

21   478.129(a). Thus, had petitioners' employees prepared the 34 Form 4473s, because petitioners were not able to
produce them for inspection by ATF, the regulations were violated in that respect as well.

22

23       [9] The most closely analogous doctrine is an equitable estoppel theory, but that doctrine does not fit the facts
here. A party seeking equitable estoppel against the government carries "a heavy burden." *Yerger v. Robertson*,

24   981 F.2d 460, 466 (9th Cir. 1992). In addition to the traditional elements of equitable estoppel enumerated
below, the party must prove two additional elements: First, that the government has engaged in "affirmative

25   conduct going beyond mere negligence," and second, that not applying estoppel would result in "a serious
injustice, and that the public will not be unduly burdened by the imposition of estoppel." *Id.* (and cases cited).

26   Under traditional estoppel principles, the party seeking estoppel is required to show that (1) the party to be
estopped knew the true facts at the time the relevant conduct occurred; (2) the party to be estopped intended that

27   the other party rely on his conduct or representation; (3) the party seeking estoppel was ignorant of the true facts;
and (4) the party seeking estoppel did indeed rely to his detriment to the other's conduct. *Id.* 466 n. 4. Petitioners

28   have not established the existence of any single one of these elements.

ATF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONERS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
ATF'S CROSS-MOTION FOR SUMMARY JUDGMENT - 10
(C03-2630RSM)

1  they had no obligation to "sweat the details."  Apparently, in petitioners' view, having undergone an

2  ATF audit, they were "golden" with respect to any violations not discovered during the course of the

3  audit.  The law is to the contrary.  *See, General Store*, *supra*, 560 F.3d at 920 (dealer, not ATF, had the

4  reporting responsibility; fact that ATF did not tell dealer it was sending reports to wrong official not a

5  defense).

6          Petitioners' previous bit of luck in earlier ATF audits does not alter the fact that the violations

7  occurred.  Nor does ATF's inspection function relieve petitioners of *their own* responsibility to regularly

8  conduct thorough and detailed audits of their own records to ensure that their employees were indeed

9  complying with the federal requirement that they obtain completed Form 4473s for *every* firearms

10 transaction, to implement appropriate systems and protocols to ensure compliance, and to take adequate

11 steps in the wake of a discovery of a lack of compliance to prevent repeat violations.  Indeed, the failure

12 to do any of those things is itself indicative of indifference to applicable requirements.  In the last

13 analysis, however, the evidence of 34 missing Form 4473s was unrebutted by petitioners, and nothing of

14 which ATF is aware precludes it from relying on those violations in concluding that the revocation of

15 petitioners' federal firearms license was justified and appropriate.

16         Petitioners also argue that their noncompliance with the federal firearms laws and regulations

17 was "microscopic" in relation to the overall number of transactions during the same period.  The

18 willfulness of a violation, however, is not rebutted by efforts to belittle its seriousness.  *See, e.g.,*

19 *Willingham Sports*, *supra*, 348 F. Supp.2d at 1309.  Far from a trivial violation, petitioners' inability to

20 produce these forms means, in substance, that petitioners are unable to show, in regards to the transfer of

21 34 firearms to 33 different people, that before transferring the weapon, information was received via the

22 NICS system that the individual purchasing the weapon was a person who could lawfully purchase a

23 firearm.[10]  Indeed, petitioners' argument tacitly asks the Court to assume that they did not transfer a

24 firearm to someone who was legally barred from purchasing firearms.  But, lacking the documentation

25

26         [10]  The abbreviation "NICS" stands for the National Instant Criminal Background Check System ("NICS").
   This is discussed more fully in section III, *infra*.  Suffice it to say for now that the law requires a licensee to call
27 identifying information pertaining to a transferee into the NICS.  Along with a response as to whether the
   licensee can proceed with the sale, the licensee receives a unique identification number which is to be recorded
28 on the Form 4473 as a means of verifying that NICS was contacted prior to the transfer of firearms.

ATF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONERS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
ATF'S CROSS-MOTION FOR SUMMARY JUDGMENT - 11
(C03-2630RSM)

**UNITED STATES ATTORNEY**
5220 United States Courthouse
700 Stewart Street
Seattle, Washington 98101-1271
(206) 553-7970

1    which supports the transaction, petitioners simply cannot say one way or another.  It is equally possible

2    that the opposite is true, and that would be a serious matter indeed.  And, whether it is 34 violations,

3    8 violations, or 1 violation really doesn't matter.  Contrary to the argument advanced here by the

4    petitioners, the law establishes no minimum number of violations for revocation.  As noted before, a

5    single willful violation of the GCA or its regulations is sufficient.  *General Store, supra,* 560 F.2d at

6    924.

7        Full compliance with this requirement is important for another reason, for not only does the

8    failure to collect completed Form 4473s make it possible for prohibited persons (who, after all, have the

9    greatest incentive to avoid the requirement) to unlawfully obtain firearms, it also impedes apprehension

10   and prosecution of such persons.  Form 4473s collect identification information from firearms

11   purchasers which aids in locating them if necessary.  False statements on Form 4473s regarding

12   eligibility to receive firearms and identification are also punishable as felonies.  18 U.S.C. §§ 922(a)(6)

13   and 924(a)(2).  Failure of a licensee to obtain Form 4473s under these circumstances precludes the

14   possibility of prosecutions for such falsifications.

15       Lastly, insofar as willfulness is concerned, the fact that petitioners obtained thousands of

16   Form 4473s from firearms transferees does not excuse the failure to obtain them and produce them in

17   regards to the 33 people and 34 firearms at issue here.  To the contrary, it establishes conclusively that

18   petitioners well knew of their obligation to collect and maintain such forms, and it further establishes

19   that, in regards to these 34 instances, they were, at a minimum, plainly indifferent to their failure to

20   follow the requirements of the law.  *See*, *e.g., Cucchiara v. Secretary of the Treasury*, 652 F.2d 28, 30

21   (9th Cir. 1981) (unrebutted findings of repeat violations of reporting requirements by high volume

22   firearms dealer were willful).[11]

23

24       [11]  With respect to petitioners' failure to obtain Form 4473s, the record establishes that petitioners have been
25   in business since 1997 and have sold thousands of firearms for which Form 4473s were completed and obtained.
     Petitioners obviously knew what the law requires when they sold a firearm.  Moreover, the regulatory
26   requirement for completing and obtaining Form 4473s was repeatedly explained to petitioner Borgelt in
     April 1997 (GX-K), June 2000 (GX-D), and September 2001 (GX-H).  The only reasonable conclusion that can
27   be drawn from this evidence is that petitioners were well aware of their obligation to obtain a Form 4473 when
     transferring a firearm.  The transfer of 34 firearms without doing so violated 18 U.S.C. § 923(g)(1) and 27 C.F.R.
28   § 478.124(a) and (c).  Actual knowledge of this requirement at the time the requirement is being violated

ATF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONERS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
ATF'S CROSS-MOTION FOR SUMMARY JUDGMENT - 12
(C03-2630RSM)

UNITED STATES ATTORNEY
5220 United States Courthouse
700 Stewart Street
Seattle, Washington 98101-1271
(206) 553-7970

1    **II.    Petitioners Willfully Failed to Maintain Forms 4473 in Required Order**

2    ATF found, as a second basis for revocation, that petitioners willfully failed to maintain their

3    Form 4473s in any orderly system.  Item 25, p. 4-5 (¶¶ 4-8).  This finding was based on an ATF

4    inspection of petitioners' business premises in which over 1,200 forms covering several years of

5    transactions were found stacked up haphazardly in no particular order behind a sales counter at the store

6    facility.  *Id.*  The ATF concluded that this was a violation of 27 C.F.R. § 478.124(b).  *Id.*[12]  Petitioners do

7    not contend that they were unaware of their obligation to keep their Form 4473s in an orderly manner,

8    nor do they point to any evidence to refute ATF's findings in this regard.  The highly disorganized state

9    in which the Form 4473s were discovered at petitioners' place of business reflected that they were

10    plainly indifferent to the obligation imposed on them as holders of a federal firearms license to maintain

11    their Form 4473s in a systematic and orderly manner.

12    This finding was based primarily on the testimony of ATF Inspector Sherlock.  Inspector

13    Sherlock testified that ATF inspectors found over 1,200 Form 4473s simply stacked up on a shelf behind

14    a counter containing a cash register.  These were not, as petitioners would now have the Court believe,

15    recently completed forms awaiting filing.  Rather, there were stacks of forms covering transactions that

16    had occurred months and even several years before.  (Transcript pp. 150–155, direct examination;

17    pp. 199–202, cross-examination).  Deborah McCollum, petitioners' store manager, did not dispute the

18    description of the state in which ATF inspectors found these forms although she had various excuses for

19    why they were found that way.  (Transcript pp. 247–250).  While petitioners here are again trying to shift

20    the blame for their own failings to ATF by alleging that unknown ATF employees caused the disarray in

21    which these Form 4473s were found, the material facts of the violation were not disputed by petitioners

22    at the time of the administrative hearing, and no evidence was presented to rebut the description

24    demonstrates, at a minimum, plain indifference and reckless disregard.

25    [12]  27 C.F.R. § 478.124(b) provides:

26    A licensed manufacturer, licensed importer, or licensed dealer shall retain in alphabetical (by
27    name of purchaser), chronological (by date of disposition), or numerical (by transaction serial
    number) order, and as a part of the required records, each Form 4473 obtained in the course of
28    transferring custody of the firearm.

ATF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONERS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
ATF'S CROSS-MOTION FOR SUMMARY JUDGMENT - 13
(C03-2630RSM)

UNITED STATES ATTORNEY
5220 United States Courthouse
700 Stewart Street
Seattle, Washington 98101-1271
(206) 553-7970

1   provided by Inspector Sherlock in her testimony during the administrative hearing of the condition in

2   which these forms were found.  Also, no evidence was introduced to support petitioners' averments here

3   that, in fact, ATF is to blame.

4         Unable to rebut this finding with evidence, petitioners contend that they were misled by ATF.

5   The basis of this contention is as follows.  Following the issuance of the Notice of Revocation, it was

6   determined that an ATF inspector had incorrectly advised petitioners that they could maintain their

7   Form 4473s by stock number, which is not a method expressly countenanced by 27 C.F.R. § 478.124(b).

8   *See* footnote 12, *supra*.[13]  In a letter sent prior to the hearing, counsel for ATF notified counsel for

9   petitioners that, because an ATF inspector had sanctioned an improper method of organization, the ATF

10  would not assert that the failure by petitioners to use a proper organizational method was a willful

11

12  [13] Petitioners try to blame ATF for the disorganized state of their records.  They strongly imply that they were
13  either ordered or advised by ATF Inspector Dimond to implement a particular recordkeeping system based on
    stock numbers.  Petitioners did implement such a system and, apparently, it proved unwieldy.  Petitioners now
14  point to this failed recordkeeping system as the source of many of their problems.  While petitioners would like
    to blame ATF for this failure, the evidentiary record demonstrates that they have only themselves to blame.  As
15  Inspector Dimond testified, petitioners' records were already in a state of disarray when he arrived for his
    inspection. (Transcript, pp. 16-17).  Inspector Dimond discussed this problem with petitioner Borgelt and
16  informed him about "possible remedies for having a better filing system."  *Id.* at 17-20.  The various options
    countenanced by ATF regulations, chronological by date of sale, alphabetical by purchaser name, or numerically
17  by serial number, were all discussed with petitioner Borgelt.  *Id.*  Petitioner Borgelt, however, wanted to use a
    filing system based on a stock number that he assigned rather than a serial number.  *Id.* at 19-20.  Petitioner
18  Borgelt apparently believed this was a preferable system for his business.  *Id.* as 20-21.  In this connection,
    Inspector Dimond testified as follows:

19      [Mr. Nickell:]  . . . Did you direct him that that is what he must do?
20      [Inspector Dimond:]  No.  I told him that he had those three choices and any of those were valid
        in the regulations.
21      [Mr. Nickell:]  And did he indicate to you that he had made an election regarding what he
        decided to do?
22      [Inspector Dimond:]  Yes.  He decided that he would like to use the stock number as a serial
        number and order the 4473's according to those stock numbers.
23      [Mr. Nickell:]  And it was your understanding that that was an appropriate method of filing the
        4473's at that time?
24      [Inspector Dimond:]  I told him that would be acceptable and that I believed that it would match
        the regulations and be an acceptable way to file an order, yes.

25  *Id.* at 21.  Inspector Dimond never told petitioners how to best run their business.  His only mistake was in
26  believing that the system petitioner Borgelt wished to use was consistent with the letter of the applicable
    regulation.  Since the license revocation was not based on having records kept in stock number order, petitioners
27  have nothing to complain about.  They implemented a recordkeeping system based on their own judgment as to
    what would work best for their business.  ATF is not to blame if the system chosen by petitioners proved to be a
28  failure.

ATF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONERS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
ATF'S CROSS-MOTION FOR SUMMARY JUDGMENT - 14
(C03-2630RSM)

UNITED STATES ATTORNEY
5220 United States Courthouse
700 Stewart Street
Seattle, Washington 98101-1271
(206) 553-7970

1    violation of the GCA.  However, the letter also advised petitioners that "the Count II allegation fairly put

2    petitioners on notice that they had failed to maintain approximately 1,200 Form 4473s in any kind of

3    order." (LX-4).  Petitioners argue that this letter "estops" ATF from asserting this violation as a basis for

4    the revocation of petitioners' federal firearms license.  However, once again, no effort is made by

5    petitioners to demonstrate that the elements of estoppel apply here.  *See* footnote 9, *supra.*

6        There is nothing in equity which should prevent ATF from addressing petitioners' failure to

7    maintain Form 4473s in some organized manner.  The DIO's Final Notice and its Findings and

8    Conclusions (nos. 6 and 7) make clear that only the failure to maintain the records in *any* kind of order,

9    by stock number or otherwise, served as the basis for the violation found.  Consistent with the facts as

10   testified to by ATF and licensee witnesses, a large number of Form 4473s were not being maintained by

11   petitioners in any kind of orderly system.  ATF honored its promise not to seek revocation to the extent

12   that petitioners were following an organizational system based on stock number.  However, ATF never

13   promised absolution with respect to all failures regarding petitioners' maintenance of required firearms

14   transaction records.  Petitioners knew, or should of known, after being counseled by Inspector Dimond

15   in 2000, that they needed to put their recordkeeping system in order, not only for purposes of complying

16   with federal firearms laws, but so they could gain some semblance of control over their inventory of

17   firearms.  Indeed, one of Inspector Dimond's concerns was that "[guns] were being stolen, possibly, and

18   [Borgelt] didn't know it."  (Transcript, p. 18).  Having failed to put their recordkeeping in some (indeed,

19   any) kind of order, as specifically counseled by Inspector Dimond only two years before, petitioners

20   acted willfully in violating 27 C.F.R. § 478.124(b).

21       **III.    Petitioners Willfully Failed to Complete the NICS Portions of Form 4473s**

22       ATF found that in 16 instances out of a sample of 1,438 Form 4473s analyzed, petitioners

23   willfully failed to fully enter required information relating to the National Instant Criminal Background

24   Check System ("NICS").  Item 25, pp. 5-6 (¶¶ 9-10).  As required by 18 U.S.C. §§ 922(t)(4), 923(g)(1)

25   and 27 C.F.R. § 478.124(c)(3)(iii), a licensee is required to record on the Form 4473 the unique

26   identification number provided by NICS as a means of verifying that NICS was contacted prior to the

27   transfer of firearms.

28

ATF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONERS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
ATF'S CROSS-MOTION FOR SUMMARY JUDGMENT - 15
(C03-2630RSM)

UNITED STATES ATTORNEY
5220 United States Courthouse
700 Stewart Street
Seattle, Washington 98101-1271
(206) 553-7970

1    Inspector Sherlock testified at the hearing that most of these incomplete forms came from the pile

2    of 1,200 forms referred to in Count II of the Notice of Revocation. (Transcript, p. 154). All the forms

3    but one (no. 21472, where petitioners did not complete the firearms identification blocks on the form)

4    were for the transfer of handguns. Several of petitioners' salespeople were responsible for the improper

5    completion of these forms, as evidenced by the transferor's name and signatures on the bottom of the

6    forms (GX-M).

7    Petitioners do not genuinely contest the factual accuracy of the allegation contained in the third

8    count of the Notice of Revocation. These failures evidence a pattern of indifference concerning the

9    completion of Form 4473s during handgun transactions. The testimony of Debra McCollum,

10   petitioners' business manager, reveals why these omissions occurred. Ms. McCollum testified about an

11   alternative system used by petitioners to track the status of handgun transactions. (Transcript,

12   pp. 260–262, 290–291). This other system was not an authorized method of complying with section

13   478.124(c)(3)(iii), as Ms. McCollum acknowledged. (Transcript, pp. 292–294). Ms. McCollum during

14   her testimony exhibited an obvious annoyance with the necessity of updating a Form 4473 when a

15   handgun was picked up several days after the initial completion of the form by the purchaser and

16   licensee due to a State law-prescribed waiting period for handgun transfers.

17   Petitioners contend, first, that some of the sixteen discovered violations occurred several years

18   before their last inspection and, second, that these sixteen forms (GX-M) constituted only a tiny

19   percentage of the Form 4473s in the sample. Petitioners also attempt to trivialize these violations by

20   arguing that the forms "were otherwise sufficiently complete to prevent any frustration of the policy

21   behind the regulations." Petit. Memo, p. 24, *ll.* 10-14.

22   ATF strongly disagrees that the failure to fully complete a Form 4473 before transferring a

23   firearm is either a technical or trivial violation of the law. The recordkeeping requirements placed upon

24   licensees by the GCA and its regulations were designed to prevent crime, and to aid in the investigation

25   of crimes after they occur. According to the Supreme Court, "[t]he principal agent of federal

26   enforcement is the dealer . . . he is required to keep records of 'sale . . . or other disposition,' § 923(g);

27   and he is subject to a criminal penalty for disposing of a weapon contrary to the provisions of the [Gun

28

ATF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONERS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
ATF'S CROSS-MOTION FOR SUMMARY JUDGMENT - 16
(C03-2630RSM)

UNITED STATES ATTORNEY
5220 United States Courthouse
700 Stewart Street
Seattle, Washington 98101-1271
(206) 553-7970

1  Control] Act, § 924." *Huddleston v. United States*, 415 U.S. 814, 824 (1974); *and see Al's Loan Office,*

2  *Inc. v. United States Department of Treasury*, 738 F.Supp 221, 225 (E.D. Mich. 1990) ("Those who

3  distribute guns must be held accountable as they are the first step in preventing lawless individuals from

4  obtaining guns.")  Entries on required records are "designed to keep a constant record of the transfer and

5  location of firearms in order to reduce the indiscriminate flow of . . . weapons and the crime that

6  inevitably follows in their wake."  *United States v Scherer*, 523 F.2d 371, 374 (7th Cir. 1975), *cert.*

7  *denied*, 424 U.S. 911 (1976).  "Without such a record, the ease with which arms could be anonymously

8  acquired would subvert the purpose of the legislation."  *See* S. Rep. No. 1097, 90th Cong., 2d Sess.,

9  *reprinted in* U.S. Code Cong. & Admin. News 2112, 2113-14.

10       Anything short of total regulatory compliance subverts the Congressional objectives of

11  preventing crime and facilitating effective crime investigation.  Thus, the Court in *Willingham Sports,*

12  *supra,* 348 F. Supp.2d 1299, described as "misguided" a licensee's characterization of violations based

13  on a failure to complete Form 4473s as "*de minimis*, inconsequential [and] 'nit-picky.'"  *Id.* at 1309

14  n. 14.  "To the contrary," wrote the Court, " the gravity of the policy objectives of the Gun Control Act,

15  from both a law enforcement standpoint and a safety standpoint, strongly militates in favor of allowing

16  the ATF to insist on total compliance as a condition of retaining the privilege of dealing in firearms."  *Id.*

17  Indeed, where a federal firearms licensee does not properly maintain records in strict compliance with its

18  obligations under the GCA and its implementing regulations, ATF's ability to fulfill its legislative

19  mandate is thereby compromised.  *See, 3 Bridges, Inc. v. United States*, 216 F.Supp.2d 655, 659

20  (E.D. Ky. 2002).

21       The applicable regulations require firearms dealers to record the NICS contact information in

22  order to verify that the dealer contacted NICS prior to transferring a firearm.  *See*, Final Rule,

23  Implementation of Public Law 103-159, Relating to the Permanent Provisions of the Brady Handgun

24  Violence Prevention Act, 63 Fed. Reg. 58,272, 58,276 (discussing comments received regarding the

25  requirement to record on Form 4473 the NICS transaction number) (Oct. 29, 1998).  The transaction

26  number is the key to the NICS Audit Log and is the only information retained by NICS establishing that

27  a background check was requested since other information regarding the firearms transaction must be

28

ATF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONERS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
ATF'S CROSS-MOTION FOR SUMMARY JUDGMENT - 17
(C03-2630RSM)

UNITED STATES ATTORNEY
5220 United States Courthouse
700 Stewart Street
Seattle, Washington 98101-1271
(206) 553-7970

1  destroyed as required by law, 18 U.S.C. § 922(t)(2)(C).  *See*, Final Rule, National Instant Criminal

2  Background Check System Regulation, 63 Fed. Reg. 58,303, 58,303-4 (discussing NICS Audit Log)

3  (Oct. 30, 1998) (codified at 28 C.F.R. Part 25).  Moreover, firearms dealers are not provided the option

4  of completing only some portions of the required records.  All portions of Form 4473s are required to be

5  completed by firearms licensees.  27 C.F.R. § 478.21(a).

6        Petitioners were specifically cited for this same violation in June 2000 (GX-E) and should have

7  exercised the utmost vigilance to insure that violations were not repeated.  Particularly in light of the

8  previous citation petitioners received for the same conduct, petitioners' failure to ensure that no weapon

9  was transferred from its inventory in the absence of a fully completed Form 4473 evidences, at a

10  minimum, conscious indifference to the consequences of their actions.

11        As in the case of the completely missing Form 4473s, petitioners again argue that they did not act

12  willfully because, according to petitioners, the number of violations was small in relation to the size of

13  petitioners' operation.  However, as ATF has already established, a single willful violation is sufficient

14  to sustain the revocation of petitioners' federal firearms license.  *See General Store*, 560 F.3d at 924.

15        Petitioners also suggest that most or all of these violations preceded previous ATF audits and, as

16  a consequence, were wrongly considered by ATF in revoking their license.  However, this argument

17  does not square with the record.  The last compliance inspection of petitioners' business before the 2002

18  inspection that led to the revocation of petitioners' license was conducted in the summer of 2001 by ATF

19  Inspector Sanchez.  Inspector Sanchez began his inspection at petitioners' place of business in July 2001,

20  and the results of the inspection were discussed with petitioner Borgelt in a closing conference on

21  September 12, 2001.  Exhibit 2 at p. 5.  Thus, for purposes of analyzing the veracity of petitioners'

22  argument, the operative date is September 12, 2001.

23        The sixteen Form 4473s are set forth at Exhibit M.  Of these sixteen Form 4473s, only three of

24  the transactions were completed before the September 12, 2001 closing conference involving Inspector

25  Sanchez and petitioner Borgelt.  This means, of course, that 13 of the sixteen incomplete Form 4473s

26  correspond to transactions of firearms which occurred *after* the closing conference.  In the case of eight

27  of these thirteen Form 4473s, *none* of the required information relating to the NICS check is recorded on

28

ATF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONERS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
ATF'S CROSS-MOTION FOR SUMMARY JUDGMENT - 18
(C03-2630RSM)

UNITED STATES ATTORNEY
5220 United States Courthouse
700 Stewart Street
Seattle, Washington 98101-1271
(206) 553-7970

1    the form.[14]  On four of the Form 4473s, the only thing recorded in regards to the NICS check is the date

2    when the transferee's identifying information was supposedly transmitted for an NICS check.  However,

3    on *none* of these four Form 4473s is any NICS number recorded nor, significantly, any description of the

4    response received from the NICS check as to whether the transfer of the firearm could legally be made to

5    the putative transferee, or not.[15]  On the last of these 13 Form 4473s, there is only unintelligible scribbled

6    handwriting in the area of the document where the NICS information is supposed to be recorded, and

7    none of the information concerning the results of an NICS check are recorded.[16]

8          Thus, even if the Court were to accept at face value petitioners' argument that it should have a

9    free pass with respect to Form 4473 violations which occurred prior to the date of the inspection of their

10   business by ATF Inspector Sanchez (and we are not suggesting that the Court should) that still leaves

11   petitioners with no answer for 13 separate violations of the requirement that NICS information be

12   recorded on Form 4473s, all of which occurred after the Sanchez inspection was completed.[17]

13   **IV.    Petitioners Willfully Failed to Timely Account for the Disposition of 262 Firearms**

14          Finally, ATF found that petitioners willfully failed to account for the disposition of firearms.

15   Item 25, p. 6 (¶¶ 11-12).  During the 2002 inspection, petitioners were unable to account for the

16   whereabouts of 262 firearms which its records showed it had received into inventory.  *Id*.  As required

17   by 18 U.S.C. § 923(g)(1) and 27 C.F.R. 478.125(e), a licensee is required to record the sale or other

18   disposition of a firearm not later than seven days following the date of the transaction.[18]

19

20   [14]  See Form 4473s for Copeland (4/27/02), Grant (9/20/02), Williams (4/20/02), Langa (10/11/02), Herr
21   (10/24/02), Patton (10/25/02), Gill (10/23/02) and D'Andrea (10/12/02).  Exhibit M

22   [15]  See Form 4473s for Grant (9/20/02), Watson (9/14/02), Cunningham (7/7/02) and Easley (12/22/01).

23   [16]  See Form 4473 for Berry (10/9/02).

24   [17]  These violations have nothing at all to do with incomplete serial numbers.  Hence, petitioners' reference to
     "incomplete serial numbers," Petit. Memo at p. 24, *ll.* 6-10, is a *non sequitur*.

25   [18]  27 C.F.R. 478.125(e) provides, in pertinent part:

26      **(e) Firearms receipt and disposition by dealers.**  Except as provided in § 478.124a with
27      respect to alternate records for the receipt and disposition of firearms by dealers, each licensed
        dealer shall enter into a record each receipt and disposition of firearms.  In addition, before
28      commencing or continuing a firearms business, each licensed dealer shall inventory the firearms

ATF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONERS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
ATF'S CROSS-MOTION FOR SUMMARY JUDGMENT - 19
(C03-2630RSM)

UNITED STATES ATTORNEY
5220 United States Courthouse
700 Stewart Street
Seattle, Washington 98101-1271
(206) 553-7970

1    Twice before, in 2000 and 2001, petitioners were cited for related violations of this

2    recordkeeping requirement.  GXs-E and I.  Petitioner Borgelt was also separately cited for a violation of

3    this requirement in 1995 when he was operating under the name of "Pacific Shooters Supply."  (GX-J).

4    Petitioners had been repeatedly reminded of their obligation to accurately and completely record such

5    transactions when inspectors reviewed the legal requirements with petitioner Borgelt in 1997, 2000 and

6    2001 (GXs-D, H and K and LXs-1, 2 and 3).  In fact, petitioners were required to report that they were

7    unable to account for approximately 150 firearms in 2001.  (Transcript,  pp. 78–79, 109–110).  The

8    seriousness of these transgressions was communicated to petitioners in August 2000 when they were

9    warned in writing and at admonitory conferences that if they committed this type of violation again, such

10   violation would be considered willful and could result in the revocation of their license. (GXs-F and G).

11   Petitioners do not dispute that they violated 18 U.S.C. § 923(g)(1) and 27 C.F.R. § 478.125(e) by

12   failing to timely record the disposition of firearms.  Instead, petitioners quibble with the degree to which

13   they failed in meeting their obligations and try to deflect blame for their failings on ATF.  However,

14   petitioners' arguments fail to demonstrate that ATF erred in its conclusion that petitioners' inability to

15   account for the disposition of a large number of firearms constituted a willful violation.

16   Petitioners make various arguments as to why the number of unaccounted firearms found by ATF

17   is too large, none of which is supported by the evidentiary record.  Petitioners argue that: (1) ATF

---

19   possessed for such business and shall record same in the record required by this paragraph.  The
     record required by this paragraph shall be maintained in bound form under the format prescribed
20   below.  The purchase or other acquisition of a firearm shall, except as provided in paragraph (g)
     of this section, be recorded not later than the close of the next business day following the date of
21   such purchase or acquisition. The record shall show the date of receipt, the name and address or
     the name and license number of the person from whom received, the name of the manufacturer
22   and importer (if any), the model, serial number, type, and the caliber or gauge of the firearm.
     The sale or other disposition of a firearm shall be recorded by the licensed dealer not later than 7
23   days following the date of such transaction.  When such disposition is made to a nonlicensee, the
     firearms transaction record, Form 4473, obtained by the licensed dealer shall be retained, until
24   the transaction is recorded, separate from the licensee's Form 4473 file and be readily available
     for inspection.  When such disposition is made to a licensee, the commercial record of the
25   transaction shall be retained, until the transaction is recorded, separate from other commercial
     documents maintained by the licensed dealer, and be readily available for inspection.  The record
26   shall show the date of the sale or other disposition of each firearm, the name and address of the
     person to whom the firearm is transferred, or the name and license number of the person to
27   whom transferred if such person is a licensee, or the firearms transaction record, Form 4473,
     serial number if the licensed dealer transferring the firearm serially numbers the Forms 4473 and
28   files them numerically.

---

ATF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONERS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
ATF'S CROSS-MOTION FOR SUMMARY JUDGMENT - 20
(C03-2630RSM)

UNITED STATES ATTORNEY
5220 United States Courthouse
700 Stewart Street
Seattle, Washington 98101-1271
(206) 553-7970

1   prevented petitioners' employees from timely recording the disposition of 37 (or 49) of the firearms by

2   denying them access to petitioners' records; (2) 8 firearms were recorded in another record referred to as

3   a "repair record;" (3) 22 undated firearms transactions "may" have occurred during the seven day period

4   before records were "seized" by ATF inspectors for purposes of inspection; (4) five of these unaccounted

5   weapons may have resulted from an accounting error by petitioners' employees; (5) unspecified "similar

6   distortions" account for another two unaccounted weapons; and (6) four weapons were transferred to

7   other federal firearms licensees.

8        According to petitioners' math (which is supported only by legal argument), that still leaves

9   some 172 firearms unaccounted for at the time of the ATF inspection.  And petitioners contend that this

10  number should be reduced even more.  Consistent with their theory that, for some reason, they are

11  entitled to a free pass for violations which occurred at the time of previous inspections, petitioners would

12  further reduce that number by 52 firearms.  Petitioners claim that, because these 52 firearms were guns

13  that petitioners were unable to locate at the time of previous inspections, they can't be counted against

14  them anymore.

15       With the benefit of these self-granted reductions, petitioners argue that "the real number" of

16  unaccounted for guns at the time of the 2002 ATF inspection was approximately 120 firearms instead of

17  262, as determined by ATF.  Stated another way, crediting petitioners' arguments fully, they are

18  admitting that they were unable to account for the whereabouts of 120 guns which were supposed to be

19  in their inventory at the time of the 2002 inspection.

20       The apparent purpose of this exercise is to make petitioners' violations look less egregious.  To

21  that end, petitioners argue that, given the size of their operation, their inability to account for the

22  whereabouts of 120 firearms isn't all that bad and, therefore, not willful.  The very same contention was

23  squarely rejected by the Court in *RSM, Inc., v. Herbert*, 466 F.3d 316 (4th Cir. 2006), a case in which the

24  licensee, who sold 30,000 firearms (225 per month) during an 11 year period, could not account for the

25  whereabouts of 287 firearms.  "This argument," according to the Court, "loses sight of the larger picture

26  and the need for strict compliance with the Gun Control Act."  *Id.* at 323.  So it is here.  "However

27  onerous the GCA's regulatory regime for federal firearms dealers may seem, violations create a very real

28

ATF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONERS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
ATF'S CROSS-MOTION FOR SUMMARY JUDGMENT - 21
(C03-2630RSM)

UNITED STATES ATTORNEY
5220 United States Courthouse
700 Stewart Street
Seattle, Washington 98101-1271
(206) 553-7970

1    potential for dangerous consequences: 'When a firearms dealer cannot account for guns or fails to ensure

2    that guns are sold to authorized persons, the public safety is directly and meaningfully implicated.'"

3    *American Arms International v. Herbert*, 563 F.3d 78 (4th Cir. 2009) (quoting, *RSM, Inc., v. Herbert*,

4    *supra*).

5        The actions of a licensee are willful if the licensee knows of a requirement and simply chooses

6    not to follow it or, through the licensee's actions, demonstrates a plain indifference to the licensee's

7    obligations.  The relevant standard cannot be turned into purely a numbers game.  *American Arms*

8    *International, supra*, 563 F.3d 78 ("Plain indifference can be found even where nine times out of ten a

9    licensee acts in accordance with the regulations, if he was plainly indifferent to the one-in-ten

10   violation.").

11       Petitioners make a variety of additional arguments based upon their mistaken understanding of

12   the term "willfully violated" in 18 U.S.C. § 923(e).  Perversely, the underlying theme of these arguments

13   is that the only obligations under the GCA for which a federal firearms licensee can be held to account

14   are those which the licensee repeatedly violates and as to which the licensee received repeated warnings

15   from ATF immediately preceding the particular violation.  Implicit in petitioners' argument is the view

16   that federal firearms licensees are under no obligation to act affirmatively themselves on an ongoing

17   basis to ensure that they are operating within the letter of the law.[19]  Consistent with this view,

18   petitioners argue that they cannot be found to have acted willfully in failing to account for firearms in

19   their inventory because they had been instructed about their failure to account for firearms "on only one

20   [previous] occasion."  Petit. Memo. pp. 27, *ll*. 7-12.  Also, petitioners contend that their slate was wiped

21   clean as to past violations, and past warnings by ATF, which were not specifically identified as repeat

22   violations in the very next inspection.  Under petitioners' theory, it they did not receive a citation for the

23   same offense in the next inspection, they were essentially free thereafter to prospectively violate the

24   requirement without fear of consequence, because the violation could no longer be regarded to be a

25

26       [19]  Indeed, the disarray in petitioners' operation was so marked that it would appear that, without ATF's
     intervention, petitioners would not ever have discovered their  gross failure to keep track of its firearms
27   inventory.  A similar situation was presented in *American Arms International v. Herbert*, 563 F.3d 78 (4th Cir.
     2009).

28

ATF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONERS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
ATF'S CROSS-MOTION FOR SUMMARY JUDGMENT - 22
(C03-2630RSM)

**UNITED STATES ATTORNEY**
5220 United States Courthouse
700 Stewart Street
Seattle, Washington 98101-1271
(206) 553-7970

1    "repeat" violation.

2         Not only is this argument incorrect legally, it is incorrect factually.[20]  As noted before, petitioners

3    have been cited for violations of this requirement before, most notably following an inspection in June

4    2000.  In his report of June 22, 2000, ATF Inspector John Dimond cited petitioners for an identical

5    violation, noting in his report that petitioners had 421 firearms on their books that could not be found in

6    their inventory.  GX-E.  The violations identified during that inspection were discussed with petitioner

7    Borgelt at the time of the inspection.  GX-F.  At that time, petitioners were informed that:

8              The significance of the violations found at your premises raises a serious question as to
         your willingness and or ability to conduct operations in accordance with laws and
9         regulations.  As a result, we are contemplating a revocation of your Federal Firearms
         License.

10   Id.  A "warning conference" followed on August 14, 2000.  GX-G.  At the warning conference,

11   petitioner Borgelt informed ATF that changes to business operations had been made, and he provided

12   assurances that future violations would not occur and that he would take specific measures to correct the

13   violations.  Id.  Based on these assurances, ATF agreed not to take further administrative action on

14   petitioners' license at that time.  However, petitioners were specifically informed that "future violations

15   of this nature will be viewed as willful in nature and may result in revocation of your license."  Id.

16   Notwithstanding, this very clear warning, and in spite of petitioners' assurances that they would address

17   the problem and cure the violation, only two years later, petitioners' A&D records again failed to reflect

18   the disposition of a significant number of firearms which were not in petitioners' inventory of firearms.

19   The willfulness of petitioners' violation is thus plainly evidenced.[21]

20

21   _____

22   [20]  Moreover, petitioners' view of their obligations turns on its head the admonition by the high Court in the
     Huddleston case, supra, 415 U.S. 814, that the GCA makes the holder of a federal firearms license "[t]he
23   principal agent of federal enforcement."  Id. at 824.

24   [21]  Petitioners also seek to mitigate their conduct by taking credit for the results of efforts made by ATF
     inspectors to locate the firearms that petitioners' records reflected were in its inventory.  Petit. Memo. pp. 12-13.
25   This argument is unavailing.  The fact that the starting number was ultimately whittled down to a smaller number
     through those efforts does not inure to petitioners' benefit.  Compliance with the requirement that a licensee keep
26   a running account of the acquisition and disposition of firearms cannot be done eventually, or only after extensive
     assistance from ATF inspectors during an inspection.  See American Arms International, supra, 563 F.3d 78
27   (remedial efforts after violations discovered do not compensate for fact that there was a violation in the first
     place).  The law and regulations place the obligation squarely on petitioners' shoulders, and require that the
28   disposition of a firearm be recorded within 7 days of the transaction.

ATF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONERS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
ATF'S CROSS-MOTION FOR SUMMARY JUDGMENT - 23
(C03-2630RSM)

UNITED STATES ATTORNEY
5220 United States Courthouse
700 Stewart Street
Seattle, Washington 98101-1271
(206) 553-7970

1    **V.    Petitioners have not been treated unfairly**

2    Petitioners also contend, in effect, that they have been treated unfairly because the inspection of

3    their business was triggered by their connection to the weapon used in the 2002 "Beltway Sniper"

4    attacks.  This argument represents one last attempt to shift the blame for their failings to ATF.  However,

5    no evidence was produced at the hearing showing any actual bias or appearance of impartiality on the

6    part of any ATF employee.  No evidence of ATF bad faith or intent to harm petitioners was presented at

7    the hearing.  Rather, the evidence in the record clearly reflects that petitioners were willful in their

8    failure to comply with the strict regulatory requirement placed upon them as federal firearms licensees.

9    It is easily recognized that circumstances in October 2002 gave rise to the need for an inspection

10   of petitioners because a rifle used in an infamous series of killings could not be accounted for by the last

11   known legal possessor of the rifle  -- the petitioners.  The inspection was initiated in good faith and the

12   licensing action was needed in light of the findings of the inspection.  Unfortunately for petitioners,

13   when this unwelcome attention was placed upon their business operations, their failings as federal

14   firearms licensees were patently apparent.  In the last analysis, petitioners have no one to blame for the

15   loss of their license but themselves.

16

17

18

19

20

21

22

23

24

25

26

27

28

ATF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONERS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
ATF'S CROSS-MOTION FOR SUMMARY JUDGMENT - 24
(C03-2630RSM)

UNITED STATES ATTORNEY
5220 United States Courthouse
700 Stewart Street
Seattle, Washington 98101-1271
(206) 553-7970

1

**CONCLUSION**

2      For the foregoing reasons, respondent Bureau of Alcohol, Tobacco, Firearms and Explosives

3  respectfully requests that the motion for summary judgment of petitioners Brian D. Borgelt and Charles

4  N. Carr be denied, and the motion of respondent Bureau of Alcohol, Tobacco and Firearms be granted.

5

6      DATED this   20th   day of     May     , 2009.

7                      Respectfully submitted,

8                      JEFFREY C. SULLIVAN
                       United States Attorney

9

10                     s/ Brian C. Kipnis
                       BRIAN C. KIPNIS
11                     Assistant United States Attorney
                       5220 United States Courthouse
12                     700 Stewart Street
                       Seattle, WA 98101-1671
13                     Telephone: (206) 553-7970
                       Fax: (206) 553-4073
14                     E-mail: brian.kipnis@usdoj.gov

15                     Attorneys for Respondent Bureau of Alcohol, Tobacco, Firearms
                       and Explosives

16

17

18

19

20

21

22

23

24

25

26

27

28

ATF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONERS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
ATF'S CROSS-MOTION FOR SUMMARY JUDGMENT - 25
(C03-2630RSM)

UNITED STATES ATTORNEY
5220 United States Courthouse
700 Stewart Street
Seattle, Washington 98101-1271
(206) 553-7970

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the United States Attorney Office for the Western District of Washington and is a person of such age and discretion as to be competent to serve papers.

That on May 20, 2009, she electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the attorney(s) of record for the plaintiff(s):

C. James Frush
j.frush@cablelang.com

To the person(s) who are non CM/ECF participants, service will be made via U.S. postal service, addressed as follows:

DATED this 20th day of May, 2009.

s/Tina Litkie
TINA LITKIE
Legal Assistant
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: (206) 553-8639
Fax: (206) 553-4073
E-mail: tina.litkie@usdoj.gov

ATF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONERS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
ATF'S CROSS-MOTION FOR SUMMARY JUDGMENT - 26
(C03-2630RSM)

UNITED STATES ATTORNEY
5220 United States Courthouse
700 Stewart Street
Seattle, Washington 98101-1271
(206) 553-7970