UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

|  |  |
|---|---|
| BRIAN D. BORGELT and CHARLES N. CARR, dba BULL'S EYE SHOOTERS SUPPLY,<br><br>           Petitioners,<br><br>    v.<br><br>THE BUREAU OF ALCOHOL, TOBACCO AND FIREARMS,<br><br>           Respondent. | CASE NO. C03-2630 RSM<br><br>ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PETITIONERS' MOTION FOR SUMMARY JUDGMENT |

## **I. INTRODUCTION**

    This matter comes before the Court on the parties' cross motions for summary judgment. The Bureau of Alcohol Tobacco and Firearms ("ATF") found that Petitioners willfully violated provisions of the Gun Control Act and ATF regulations. The violations are divided into four counts as follows: (1) willfull failure to complete and maintain a Form 4473 for 34 weapons transactions, (2) willful failure to maintain an orderly filing system of Forms 4473, (3) willful failure to enter required information relating to the National Instant Criminal Background Check System ("NICS") on 16 Forms 4473, and (4) willful failure to account for the disposition of firearms. Petitioners argue that their violations in all counts were not willful and that the violations alleged in Count 4 were not violations at all.

    For the reasons set forth below, the Court finds that Petitioners did not willfully commit the violations alleged in Count 1, but did willfully commit the violations alleged in Counts 2,

ORDER
PAGE - 1

3, and 4. Because this Court need only find one willful violation in order to uphold the revocation, this Court holds that the license revocation was authorized.

## II.  DISCUSSION

**A.  Background**

    **1.  Federal Firearms Regulations**

Licensed firearms dealers are subject to strict federal regulations requiring them to keep records so that the federal government can track the location of firearms and ensure that they stay out of the hands of people who are not legally allowed to have them. Dealers are required to keep a book, called the acquisitions and dispositions book or A&D book, in which all acquisitions and dispositions of firearms are recorded. Whenever a firearm enters the store, the dealer must enter it as an "acquisition"; conversely, whenever a firearm leaves the store, the dealer must record the "disposition." Whenever a weapon is logged in the A&D book as an acquisition and there is no corresponding entry for disposition, that is referred to as an "open entry" and that weapon should be in the dealer's current inventory. If the number of open entries does not match the number of weapons in inventory, then weapons are missing either because they were misplaced, stolen, or legally transferred but not recorded in the A&D book. This is a serious problem because these weapons are not accounted for.

Whenever a dealer transfers a firearm, it is required to complete a Form 4473. Part of this form is filled out by the transferee, and requires that person to give his identifying information and to sign under penalty of perjury that he is not a felon, a fugitive, mentally defective, a user of controlled substances, or some other person not legally able to acquire a firearm. Section B of the form is filled out by the dealer. The dealer must call NICS to run a quick background check on the transferee and then write down the response, whether the transactions should "Proceed," be "Denied," or "Delayed," on Form 4473. The dealer must also record a unique identification number provided by NICS to verify that NICS was indeed contacted prior to transferring the firearm. These Forms 4473 must then be filed in either

alphabetical, chronological, or numerical order and kept available for ATF inspection for twenty years.

### 2. ATF Inspections

Petitioners opened Bulls Eye Shooter Supply ("Bulls Eye") in 1997 and received a federal license to sell firearms. In 1998 ATF Inspector Bonney audited Petitioners' shop. Inspector Bonney found no violations. He noted that the number of open entries in the A&D book only exceeded the inventory of weapons by four, which was small enough to be attributed to a miscount on Inspector Bonney's part. He stated in his report that Bulls Eye had "very complete and accurate records." (Administrative Record, Exhibit 2).

In 2000, Bulls Eye was audited again, this time by Inspector Dimond. Inspector Dimond found ten categories of violations, the most serious of which was that the number of open entries in the A&D book exceeded inventory by 421 firearms. Inspector Dimond found this to be particularly troublesome because he thought people might be stealing firearms from Bulls Eye without Petitioners' knowledge. Also of note, Inspector Dimond found that five of Petitioners' Forms 4473 lacked proper NICS information indicating that employees had not called NICS to do a background check or had not recorded the information.

Inspector Dimond further found that Petitioner's filing system was inadequate. In a meeting with Brian D. Borgelt, one of the owners of Bulls Eye, following the audit, he explained that under applicable regulations, Petitioners needed to file Forms 4473 in either alphabetical, chronological, or numerical order by serial number, and that Petitioners' files, which were in approximate chronological order only, were not acceptable. He further stated that filing Forms 4473 according to "stock number" would qualify as a serial number and stated that filing Forms in that manner would make it easier to locate Forms corresponding to open entries in future audits. Inspector Dimond's statement that regulations permitted filing according to stock number was legally incorrect. Borgelt decided to file his Forms according to stock number and hired an employee to refile thousands of old forms.[1]

---

[1] In their briefs, the parties purport to dispute who was responsible for Petitioners' decision to file Forms 4473 according to stock number. However, the testimony of Inspector Dimond and the declaration of Mr. Borgelt are

ORDER
PAGE - 3

ATF sent a letter to Borgelt following Inspector Dimond's audit stating, "The significance of the violations found at your premises raises a serious question as to your willingness and or ability to conduct operations in accordance with the laws and regulations. As a result, we are contemplating the revocation of your Federal Firearms License." (Administrative Record, Exhibit 1 at 2). Borgelt attended a conference where ATF reiterated the need for strict compliance with gun control laws. Following this conference, ATF chose not to revoke his license. Borgelt also made efforts to locate the weapons that were not found in inventory. He suspected that those he could not locate were probably stolen by former employees.

Bulls Eye was audited a third time in 2001 by Inspector Sanchez. Inspector Sanchez found two violations, neither of which was a repeated violation. In addition to those two violations, Inspector Sanchez found that there were 155 more open entries than weapons in inventory. A Bulls Eye employee told him that the discrepancy existed because there were still weapons missing from the previous inspection. Inspector Sanchez responded that if those weapons could not be located, Bulls Eye must file a "theft loss report." Bulls Eye filed the reports, therefore eliminating any discrepancy between the A&D book and inventory. In other words, Inspector Sanchez did not find a violation of the A&D book reporting requirements because every weapon that was missing was reported stolen.

In 2002, a two-man sniper team killed ten people in a series of attacks on the East Coast, infamously known as the Beltway Sniper Attacks. When the snipers were arrested, law enforcement determined that the rifle used in the attacks was stolen from Petitioners' store, thus prompting another audit, this time by Inspector Sherlock. Unlike the previous audits that were conducted by one inspector, this audit involved numerous inspectors because of the publicity involved. ATF found four counts of violations: (1) Forms 4473 for 34 firearm transfers were missing, (2) 1200 Forms 4473 haphazardly stacked behind a counter and were not filed in any order, (3) 16 Forms 4473 lacked proper NICS information, and (4) open entries

---

consistent on this matter. (Administrative Record, Item 27 at 16-21; Second Supplemental Borgelt Declaration at 2).

ORDER
PAGE - 4

exceeded inventory by 262, indicating a failure to keep adequate records. ATF revoked Petitioners' license. Petitioners requested a hearing to challenge the revocation. The hearing examiner found that Petitioners willfully violated all four counts.

**B.  Standard of Review**

Petitioners challenge the hearing examiner's decision pursuant to 18 U.S.C. § 923(f). This Court exercises de novo review over the revocation. *Id.*; *see Perri v. Dept. of the Treasury*, 637 F.2d 1332, 1335 (9th Cir. 1981); *Stein's Inc., v. Blumenthal*, 649 F.2d 463, 466 (7th Cir. 1980). The district court may, in its discretion, take additional evidence, but is not required to hold a new trial or even an evidentiary hearing. *Cucchiara v. Sec'y of the Treasury*, 652 F.2d 28, 30 n. 1 (9th Cir. 1981); *Perri*, 637 F.2d at 1335. In this case, the Court has accepted seven additional exhibits from Petitioners as well as an additional declaration filed with Petitioners' briefs.

Even though this is a motion for summary judgment and fact finding is technically inappropriate, this Court is authorized under 18 U.S.C. § 923(f)(3) to grant summary judgment based on the administrative record when the material facts developed at the hearing are not substantially drawn into question. *Cucchiara*, 652 F.2d at 30 n.1; *Stein's*, 649 F.2d at 468 n.7. In addition, because review is de novo, this Court is not required to give deference to the Hearing Officer's findings or conclusions and gives them only as much weight as the Court believes they deserve in light of the administrative record and the additional evidence submitted. *See Stein's*, 649 F.2d at 466-67.

Under § 923(f)(3), this Court is directed to decide whether the Attorney General was "authorized" to revoke Petitioners' license. The Attorney General is authorized to revoke a license if the license holder "willfully violates any provision of [the Gun Control Act] or any rule or regulation prescribed by the Attorney General under [the Gun Control Act]." 18 U.S.C. § 923(e). Thus a single willful violation is enough to uphold the revocation. *General Store, Inc. v. Van Loan*, 560 F.3d 920, 924 (9th Cir. 2009); *DiMartino v. Buckles*, 129 F. Supp. 2d 824, 827 (D. Md.), *aff'd*, 19 Fed. Appx. 114 (4th Cir. 2001).

**C. Willfulness**

To revoke a firearms license, ATF must establish a willful violation of federal gun control laws. Willfulness is established "when a dealer understands the requirements of the law, but knowingly fails to follow them or was indifferent to them." *Perri*, 637 F.2d at 1336; *see also General Store*, 560 F.3d at 923; *Cucchiara*, 652 F.2d at 30. The Ninth Circuit explained in *General Store* that "indifference" means "plain indifference," which is indistinguishable from recklessness. *General Store*, 560 F.3d at 923. "Mere mistake or negligence" is not enough to establish a willful violation. *Id.*

There is rarely any direct evidence of willfulness. Instead, the government often proves willfulness by showing that a licensee repeatedly violated regulations despite knowledge of them and repeated warnings. *See e.g.*, *Am. Arms Int'l v. Herbert*, 563 F.3d 78 (4th Cir. 2009) (repeated violations of A&D bookkeeping in four audits over 19 years); *RSM, Inc. v. Herbert*, 466 F.3d 316 (4th Cir. 2006) (repeated and continuous violations through four audits); *Cucchiara*, 652 F.2d 28 (repeated failure to record dispositions in A&D book over the course of three audits); *Willingham Sports, Inc. v. Bureau of Alcohol Tobacco*, *Firearms and Explosives*, 348 F. Supp. 2d 1299 (S.D. Ala. 2004) (repeated violations over four audits); *Breit & Johnson Sporting Goods, Inc. v. Ashcroft*, 320 F. Supp. 2d 671 (N.D. Ill. 2004) (repeated violations over four audits); *3 Bridges, Inc. v. U.S. Sec'y of the Treasury*, 216 F. Supp. 2d 655 (E.D. Ky. 2002) (repeated violations over three audits). However, even though it is the most common way to prove willfulness, a repeated violation is not required, so long as ATF can prove willfulness in some other way. "Plain indifference can be found even where nine times out of ten a licensee acts in accordance with the regulations, if he was plainly indifferent to the one-in-ten violation." *Am. Arms Int'l*, 563 F.3d at 87.

There is a fine line between negligent mistakes, which are bound to happen from time to time in recordkeeping, and plain indifference to regulations. The Fourth Circuit gave some guidance in *RSM*:

ORDER
PAGE - 6

> "To be sure, a single, or even a few, inadvertent errors in failing to complete forms may not amount to willful failures, even when the legal requirement to complete the forms was known. Yet *at some point*, when such errors continue or even increase in the face of repeated warnings given by enforcement officials, accompanied by explanations of the severity of the failures, one may infer as a matter of law that the licensee simply does not care about the legal requirements. *At that point*, the failures show the licensee's plain indifference and therefore become willful."

*RSM*, 466 F.3d at 322 (emphasis in original). It is, of course, this Court's task to determine where that point is in this case.

### D. The Alleged Violations

#### 1. Count 1

Count 1 alleges that Petitioners willfully failed to complete Forms 4473 for 34 transferred weapons in violation of federal regulations which requires that these forms be completed and maintained for inspection by ATF for 20 years. *See* 27 C.F.R. § 478.124(a); 27 C.F.R. § 478.129(b); 27 C.F.R. §478.121. Petitioners admit that they do not have Forms 4473 for these transactions, but argue that their failure to complete or maintain the Forms was not willful. The 34 missing Forms relate to a period from 1997 to 2002 in which approximately 26,000 Forms 4473 were prepared by Petitioners.

ATF argues that the fact that Petitioners filled out thousands of Forms 4473 establishes that they were well aware of the legal requirement to file Forms. However, knowledge of the law is not sufficient to find willfulness; the government must also prove "plain indifference." *General Store*, 560 F.3d at 923. ATF has put forward no evidence probative of indifference other than the violations themselves. Petitioners were never cited for this violation in the past. This Court cannot agree that the mere fact that 34 Forms are missing over a period of five years in which 26,000 firearms were transferred, by itself, meets ATF's burden to show willfulness rather than mere negligence.

ATF argues that there is no de minimis exception to compliance with gun control laws and that Petitioners should not receive a "free pass" simply because the number of violations is small in relation to Petitioners' total volume of business. Certainly no violation is trivial.

ORDER
PAGE - 7

*See, e.g.*, *Willingham*, 348 F. Supp. 2d at 1309 n.14 ("If ever there were a statutory scheme where a licensee should be obligated to 'sweat the details,' irrespective of how trifling they may appear, the Gun Control Act would appear to fit that bill."). But ATF must show willfulness for at least one of these violations, and it has not done so. *RSM* does not hold otherwise. In that case, the court rejected the licensee's argument that "human errors" are "virtually inevitable" and that therefore violations cannot be willful so long as the error rate is low. 466 F.3d at 322-23. However, integral to the finding of willfulness in that case was the fact that the licensee had repeated the same "human errors," in substantial and increasing number, time and time again over the course of four audits despite specific warnings regarding those violations. *Id.* at 322. In contrast, failure to file Forms 4473 is not a repeat violation in this case and the number of errors is too small to raise an inference of plain indifference. Accordingly, Petitioners' violations in Count 1 were not willful.

### 2. Count 2

Count 2 alleges that Petitioners failed to file Forms 4473 in proper order. 27 C.F.R. 478.124(b) provides that licensed dealer "shall retain" Forms 4473 in "alphabetical (by name of purchaser), chronological (by date of disposition), or numerical (by transaction serial number) order." The facts in the record show that when Petitioners filed their Forms for permanent storage in boxes, they did so in strict numerical order according to stock number. They did so because Inspector Dimond instructed them that stock number would qualify as a proper numerical order according to the regulation. However, stock number filing made it difficult for Petitioners to locate a transaction if there was a customer inquiry or if they were required by the government to do a "trace" because the inquiring party would not know the stock number of the weapon but would only have a name or date. Therefore, Petitioners kept a preliminary filing system near the front of the shop. They filed Forms 4473 in hanging folders in approximate order, meaning that the Forms were not in strict order but were in general groupings by number.[2] Additionally, inspectors found several stacks of hundreds of

---

[2] For example, the Forms for stock numbers 2500 to 2599 would all be in the same folder but not in any particular order within that folder.

ORDER
PAGE - 8

forms on a shelf which were not filed in any particular order whatsoever. These Forms mostly corresponded to transactions within the most recent month, but many were several months old, and some were very old.

ATF does not contend that Petitioners willfully violated regulations by filing their Forms in stock number order. Even though this method is not authorized, Inspector Dimond incorrectly told Petitioners that it was, and Petitioners were reasonable in relying on that statement. ATF does contend, however, that Petitioners willfully violated the filing requirements by filing Forms 4473 in approximate order, or no order at all.[3]

Petitioners' failure to file Forms 4473 in proper order was willful. There is no dispute that Petitioners knew the regulations regarding filing. Inpsector Dimond explained the three possible filing methods to Borgelt following his inspection. He assessed a violation against Bulls Eye for having files in approximate chronological order and instructed that they be put in "accurate" order. Yet despite this mandate, Petitioners continued to keep Forms 4473 in approximate order rather than strict or "accurate" order. Not only is this a repeated violation, it evidences an unwillingness to follow ATF's instructions, which amounts to plain indifference. Moreover, Petitioner's maintenance of stacks of files in no particular order shows indifference.

Petitioners contend that they were forced to keep a preliminary filing system with Forms 4473 out of order because it was difficult to locate forms in response to a trace when they were filed by stock number. Indeed, Borgelt describes the stock number filing system as "an expensive disaster of a system that made internal and external auditing impossible." (Second Supplemental Borgelt Declaration at 2). Yet despite the problems with the stock number system, and despite being aware that there are three possible methods for filing Forms 4473, Petitioners chose to use that system. When the system was not working,

---

[3] Petitioners argue that ATF is estopped from arguing willful violations of Count 2 because of a letter from ATF's counsel. However, the letter makes clear that ATF would not pursue revocation on the basis of the stock number system, but would pursue revocation on the basis of having forms not filed in any order, even stock number order. Furthermore, the Notice of Revocation clearly states that forms "had not been filed in any order."

ORDER
PAGE - 9

Petitioners did not change filing methods, nor did they contact ATF for guidance. Instead, they chose to file Forms in approximate order (in hanging folders) or no order at all (on the shelf), after being warned that strict order was required. This amounts to plain indifference and therefore, Petitioner's violation was willful.

### 3. Count 3

Count 3 states that Petitioners willfully failed to fill out the portion of Form 4473 regarding NICS background checks on 16 Forms. *See* 27 C.F.R. § 478.124(c)(iv). The Form states that the questions related to the NICS background check "must be completed prior to the transfer of the firearm(s)" by the transferor. The dealer is supposed to call NICS, transmit the transferee's identifying information, and then record whether NICS approves the transaction. The dealer is also required to record the unique transaction number provided by NICS to verify that it contacted NICS. In examining 1,438 Forms 4473 created by Petitioners, ATF found 16 that had incomplete NICS information. Most of these left the questions blank and had no NICS information, a few had the date but no other information, and one Form 4473 had some illegible scribbles.

Petitioners argue that these violations were not willful because only 16 Forms were missing information out of the 1,438 investigated, a 99% compliance rate. While it is true, as explained regarding Count 1 above, that the number of errors alone does not indicate willfulness, in this case ATF has other evidence of willfulness. First, it should be noted that this is a repeat violation. Inspector Dimond found missing NICS information on five forms in his inspection. More importantly, in this case, the violations themselves are evidence of willfulness. Unlike the violations in Count 1, these forms are not missing. They were not misplaced or misfiled or lost over the years. Instead, every portion of the forms is filled out except the section regarding background checks, evidencing a conscious decision to leave the NICS information blank. As the hearing examiner cogently stated, "Licensees are not provided the option of completing only those portions of the required records that they find convenient." (Administrative Record, Item 25 at 6). Even though Petitioners completed the entirety of the Forms 99% of the time, only one willful violation is required to revoke a

license. *General Store*, 560 F.3d at 924; *see also Am. Arms Int'l*, 563 F.3d at 87 ("Plain indifference can be found even where nine times out of ten a licensee acts in accordance with the regulations, if he was plainly indifferent to the one-in-ten violation.").

### 4. Count 4

Count 4 alleges that Petitioners willfully failed to account for the disposition of firearms in the A&D book. ATF inspectors found that the number of open entries in the A&D book exceeded weapons in inventory by 262, meaning that 262 weapons were unaccounted for. Petitioners argue that inspectors made various mistakes in counting the open entries and assert that open entries only exceeded inventory by 120. Even using Petitioners' figure, however, this Court finds a willful violation.

First, Petitioners argue that they were not required to record these weapons in the A&D book at all. 18 U.S.C. § 923(g)(1)(A) requires the licensee to "maintain such records of importation, production, shipment, receipt, sale, or other disposition of firearms at his place of business for such period, and in such form, as the Attorney General may by regulations prescribe." The regulations require the licensee to "enter into a record each receipt and disposition of firearms." 27 C.F.R. 478.125(e). Petitioners argue that they committed no violation because the discrepancy between their records and their inventory was probably due to theft of weapons, and theft is not a "disposition" within the meaning of the regulations.

This argument is unpersuasive. The language of a statute must be interpreted in light of its purpose. The purpose of the record keeping requirements is to maintain a record of all weapons that enter and leave gun shops so that law enforcement can quickly track any weapon. Not recording missing weapons would frustrate this purpose because one could not tell from the record whether a gun went missing or whether it is still in inventory. Furthermore, the A&D book allows dealers and ATF to discover when firearms are stolen by comparing open entries to inventory. If every time the records did not match inventory the licensee could exculpate himself by simply claiming the weapons were stolen, the licensee would have no incentive to constantly be checking inventory against the A&D book to discover when theft is occurring, thus making the A&D book useless for this purpose.

ORDER
PAGE - 11

The Supreme Court had occasion to examine the language of the Gun Control Act in *Huddleston v. United States*. 415 U.S. 814 (1974). In interpreting the word "acquisition" it noted that "acquire" means "to come into possession, control, or power of disposal of." *Id.* at 820. It further stated that "acquisition" and "sale or other disposition" are correlatives. *Id.* at 823. Thus, since the Supreme Court's interpretation of acquisition encompasses passive coming into possession or control of a weapon, disposition must also encompass the passive loss of possession or control of a weapon.

Finally, ATF has interpreted "disposition" to include theft and loss. Form 310.11 states that licensees "must reflect the theft/loss as a disposition entry in the Record of Acquisition and Disposition required by [the regulations]." *See* 27 C.F.R. § 478.39a. Even if the meaning of "disposition" as used in § 923 were ambiguous, which it is not, we would still defer to ATF's construction since it is permissible. *See Chevron v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843-44 (1984).

Petitioners argue in the alternative that even if their failure to record over a hundred dispositions in the A&D book constitute violations, that these violations were not willful. This Court has no trouble agreeing with the Hearing Examiner that the violations were willful. First, this is a repeat violation. In 2000, Inspector Dimond found 421 more open entries than weapons in inventory. Petitioners were informed of the seriousness of not keeping an accurate A&D book by Inspector Dimond in his exit interview, by ATF at a warning conference in late 2000, and in a letter from the ATF area supervisor, Gary Bangs. That letter clearly stated that "future violations of this nature will be viewed as willful and may result in revocation of your license." (Administrative Record, Exhibit G).

Secondly, the sheer number of violations, 120 dispositions not accounted for (taking the number most favorable to Petitioners), in the face of warnings emphasizing their seriousness, shows willfulness. *See RSM*, 466 F.3d at 322. Third, despite telling ATF that they would implement better internal controls, Petitioners took insufficient steps to ensure their records were accurate. A licensee who was not plainly indifferent to the regulations would conduct an internal audit and realize that over 100 firearms are unaccounted for. Fourth, the lack of

internal auditing is especially egregious in light of the fact that Borgelt suspected that previous employees had stolen many of the weapons that turned up missing in Inspector Dimond's audit but took insufficient action to ensure this would not happen again. In fact, according to Borgelt, a second round of employee thefts caused the discrepancy between the A&D book and inventory alleged in Count 4. Thus, according to his own declarations, Borgelt failed to prevent history from repeating itself.

This case is a prime example of why the A&D regulations exist: so that firearms dealers and the ATF know when a weapon goes missing. "When a firearms dealer cannot account for guns or fails to ensure that guns are sold to authorized persons, the public safety is directly and meaningfully implicated." *Am. Arms Int'l*, 563 F.3d at 87 (quoting *RSM*, 466 F.3d at 323).

### III.  CONCLUSION

Only a single willful violation is required to revoke a federal firearms license. *General Store*, 560 F.3d at 924. Because this Court finds that Petitioners willfully committed all the violations alleged in Counts 2, 3, and 4, the license revocation was authorized.

Having reviewed the relevant pleadings, the administrative record, the additional exhibits and declarations submitted by the parties, and the remainder of the record, the Court hereby finds and ORDERS:

(1) Respondent's Cross Motion for Summary Judgment (Dkt. #72) is GRANTED.

(2) Petitioners' Motion for Summary Judgment (Dkt. #67) is DENIED.

(3) The Attorney General was authorized to revoke Petitioners' federal firearms license.

//
//
//
//

(4)  The Clerk is directed to forward a copy of this Order to all counsel of record.

DATED this 24th day of September, 2009.

_____
RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 14